UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

INJAH TAFARI, a/k/a Richard O. Foust,[1]

                              Plaintiff,

v.

WILLIAM D. BROWN; SHERYL BUTLER;                9:10-CV-1065
JOHN W. CARVILL; CHARLES M. DEVANE;             (GTS/DRH)
ROCHE FRANK; GLENN S. GOORD; PETER
HEALY; ZVI JACOB; KAREN LaPOLT;
LUCIEN J. LeCLAIR, JR.; DAVID L. MILLER;
ARTHUR MORGENSTERN; JOHN H.
NUTTALL; THOMAS POOLE; RICHARD
ROY; ROSEMARIE WENDLAND; JEAN YOST;
and S. ZENZEN,

                              Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

INJAH TAFARI, 89-A-4807
   Plaintiff, *Pro Se*
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953

HON. ERIC T. SCHNEIDERMAN                        CHARLES J. QUACKENBUSH, ESQ.
Attorney General for the State of New York       Assistant Attorney General
   Counsel for Defendants
The Capitol
Albany, New York 12224

GLENN T. SUDDABY, United States District Judge

---

[1]      The Court notes that Plaintiff has prosecuted other *pro se* prisoner civil rights actions under the name of "Richard O. Foust."  *See, e.g., Tafari v. Aidala*, 00-CV-0405 (W.D.N.Y.); *Foust v. Gosline*, 93-CV-1274 (N.D.N.Y.); *Foust v. Gilmore*, 93-CV-0479 (W.D.N.Y.).

## MEMORANDUM-DECISION and ORDER

Currently before the Court, in this *pro se* prisoner civil rights action filed by Injah Tafari ("Plaintiff") against the eighteen above-captioned New York State correctional employees ("Defendants"), are the following: (1) the United States Magistrate Judge's Report-Recommendation recommending that (a) Defendants' motion to revoke Plaintiff's *in forma pauperis* status as having been improvidently granted pursuant to 28 U.S.C. § 1915(g) ("motion to revoke") be denied, and (b) Defendants' motion for summary judgment be granted in part and denied in part, such that all of Plaintiff's claims are dismissed, except for his claim against Defendants Wendland and Nuttal for their failure to provide him with kosher meals between January 24, 2005 and March 24, 2005 (Dkt. No. 126); (2) Plaintiff's four sets of Objections to the Report-Recommendation (Dkt. Nos. 127, 129, 130, 133); and (3) Defendants' Objection the Report-Recommendation (Dkt. No. 128).  For the reasons set forth below, the Report-Recommendation is accepted and adopted except for its recommendation regarding the survival of Plaintiff's claim against Defendants Wendland and Nuttal for failing to provide him with kosher meals between January 24, 2005 and March 24, 2005; Defendants' motion to revoke is denied; their motion for summary judgment is granted in its entirety; and Plaintiff's Second Amended Complaint is dismissed in its entirety.

## I.       RELEVANT BACKGROUND

### A.       Plaintiff's Second Amended Complaint

Generally, construed with the utmost of liberality, Plaintiff's Second Amended Complaint asserts the following eight claims against the eighteen above-captioned Defendants: (1) Defendants Miller, Wendland, Butler, Goord, and Nuttal wrongfully denied Plaintiff kosher meals from January 24, 2005, through March 24, 2005, in violation of the First Amendment;

2

(2) Defendants Wendland and Butler wrongfully removed Plaintiff from the kosher meal list from July 13, 2005, to July 15, 2005, in violation of the First Amendment; (3) Plaintiff was wrongfully denied requests for vegetarian-kosher meals, in violation of the First Amendment, (a) by Defendants Miller, Wendland, Butler, Healy, LaPort and Brown in 2006 at Eastern Correctional Facility, (b) by Defendants Poole, Yost, LeClaire, Goord, Nuttall and Devane in 2006 at Five Points Correctional Facility, and (c) by Defendants Frank, Jacob, Morgenstern, and Zenzen in 2007 at Eastern Correctional Facility and Five Points Correctional Facility; (4) Defendants Brown, Healy, LaPolt, LeClaire, Poole, Wendland, Yost, and Zenzen wrongfully denied Plaintiff holiday meals for Yom Kippur, Hannukah, and Passover during the years 2005 and 2006, in violation of the First Amendment; (5) Defendants Healy and Brown wrongfully placed Plaintiff on a restricted "loaf" diet as a result of disciplinary sanctions from December 18, 2005, through January 9, 2006, in violation of the First and Eighth Amendments; (6) through the above-described actions, Defendants caused Plaintiff to suffer weight loss and  constipation, in violation of the Eighth Amendment; (7) Defendants Goord, LeClaire, Nuttall, Poole, Roy, Yost, Carvill, Frank, Jacob, Morgernstern, and Devane wrongfully denied his requests for a transfer to Green Haven Correctional Facility (which provides qualified inmates with vegetarian-kosher meals), in violation of the First Amendment; and (8) Defendant Poole filed two misbehavior reports against Plaintiff in 2007 in retaliation for his retaining his dreadlocks, in violation of the First Amendment.  (*See generally* Dkt. No. 38.)

For a more detailed recitation of Plaintiff's claims and supporting factual allegations, the Court refers the reader to the Second Amended Complaint in its entirety, as well as the Magistrate Judge's Report-Recommendation, which accurately summarize those allegations. (Dkt. No. 38; Dkt. No. 126, at Part I [Background of Report-Rec].)

3

**B.     Defendants' Motion to Revoke Pursuant to 28 U.S.C. § 1915(g)**

On August 12, 2011, Defendants filed a motion to revoke pursuant to 28 U.S.C. §

1915(g).  (Dkt. No. 118.)  Generally, in support of their motion, Defendants assert that Plaintiff

is precluded from litigating this case without payment of filing fees pursuant to the "three

strikes" provision under 28 U.S.C. § 1915(g).  (Dkt. No. 118.)

**C.     Defendants' Motion for Summary Judgment**

On August 24, 2011, Defendants filed a motion for summary judgment.  (Dkt. No. 122.)

Generally, in support of their motion, Defendants assert the following seven arguments: (1)

Plaintiff's claims for monetary relief against Defendants in their official capacities are barred by

the Eleventh Amendment, and his claims for equitable relief are moot due to his having been

transferred to Upstate Correctional Facility; (2) Plaintiff has failed to adduce admissible record

evidence establishing the personal involvement of Defendants (who were all high-ranking

correctional officials during the times in question) in the constitutional violations alleged; (3)

Plaintiff has failed to adduce admissible record evidence establishing that the challenged policies

and/or actions regarding food and hair were not reasonably related to legitimate penological

interests; (4) Plaintiff's claims against Defendant Miller regarding the failure to provide kosher

meals are barred by the doctrines of res judicata and/or collateral estoppel; (5) Plaintiff's claims

regarding Defendants' refusal to transfer him to Green Haven Correctional Facility are not

actionable; (6) Plaintiff has failed to adduce admissible record evidence establishing either of the

two elements of a inadequate-conditions-of-confinement claim under the Eighth Amendment;

and (7) in any event, based on the current record, Defendants are protected from liability as a

matter of law by the doctrine of qualified immunity.  (*Id.*)

4

**D.     The Magistrate Judge's Report-Recommendation**

On March 6, 2012, the Magistrate Judge issued a Report-Recommendation recommending that Defendants' motion to revoke be denied and that their motion for summary judgment be granted in part and denied in part.  (Dkt. No. 126.)  More specifically, with respect to Defendants' motion to revoke, the Magistrate Judge determined that, because Plaintiff's third strike occurred *after* the filing of the current action, Plaintiff has not acquired three strikes under the parameters of 28 U.S.C. § 1915(g).  (*Id.* at 23-25.)  With respect to Defendants' motion for summary judgment, the Magistrate Judge recommended that Plaintiff's claim for the denial of kosher meals for an eight-week period during January 24 through March 24, 2005 should survive Defendants' motion, and that Plaintiff's remaining claims should be dismissed pursuant to Fed. R. Civ. P. 56 and/or 12(b)(6).  (*Id.* at 26-27.)

**E.     Defendants' Objection to the Report-Recommendation**

On March 16, 2012, Defendants submitted their Objection to the Report-Recommendation.  (Dkt. No. 128.)  Generally, in support of their Objection, Defendants assert the following two arguments: (1) Plaintiff has failed to adduce admissible record evidence establishing that the eight-week delay in January through March 2005 (during which Defendants Wendland and Nuttal failed to provide Plaintiff with kosher meals), was anything more than negligence, which is not actionable under the First Amendment and 42 U.S.C. § 1983; and (2) in any event, Defendants Wendland and Nuttal are protected from liability as a matter of law, particularly in light of Plaintiff's shifting religious designations and demands (e.g., from Rastafarianism to Judaism), which rendered entirely reasonable any errors committed by Defendants Wendland and Nuttal.  (*Id.*)

5

**F.      Plaintiff's Four Sets of Objections to the Report-Recommendation**

Plaintiff has filed four sets of Objections to the Magistrate Judge's Report-Recommendation.  (Dkt. Nos. 127, 129, 130, 133.)[2]

More specifically, on March 13, 2012, Plaintiff filed an Objection to the Report-Recommendation.  (Dkt. No. 127.)  Generally, in his Objection, Plaintiff asserts the following six arguments: (1) genuine issues of material fact remain that preclude granting summary judgment; (2) Defendants should not have been dismissed for lack of personal involvement; (3) Defendant Goord created the DOCCS policy prohibiting dreadlocks, Defendant Poole allowed the policy to continue, and the policy violated Plaintiff's First Amendment rights; (4) the right to practice one's religion includes the right to assemble and acts of worship, and Plaintiff was denied these rights during the Yom Kippur, Hanukkah, and Passover holidays; (5) Plaintiff was denied the free exercise of religious practice by Defendants, who withheld special holiday meals and failed to provide him with daily vegetarian-kosher meals in accordance with his religious beliefs; and (6) the provision of a vegetarian-kosher meal is neither cost-prohibitive nor administratively difficult.  (*Id*.)

On March 15, 2012, Plaintiff filed a Supplemental Objection to the Report-Recommendation.  (Dkt. No. 129.)  Generally, in his Supplemental Objection, Plaintiff asserts the following two arguments: (1) because Defendants were personally involved in the constitutional violations alleged, they should not have been dismissed from the action; and (2) correctional facilities currently provide special meal accommodations to certain prisoners because of food allergies or other health-related issues.  (*Id*.)

---

[2]      Each of these Objections was dated, and thus deemed "filed," before the applicable deadline of March 23, 2012.

On March 19, 2012, Plaintiff filed a "Second Addendum" to his Supplemental Objection. (Dkt. No. 130.)  Generally, in his Second Addendum, Plaintiff asserts the following two arguments: (1) based on a review of a CAD menu, it is clear that, once meat and meat by-products are removed from the selections, Plaintiff is permitted to eat only some items that do not provide him a nutritionally adequate diet; and (2) Defendants have adduced no admissible record evidence that any deviation from the CAD menu would present a substantial financial or administrative burden. (*Id*.)

Finally, on March 22, 2012, Plaintiff filed a "Third Addendum" to his Supplemental Objection.  (Dkt. No. 133.)  Generally, in his Third Addendum, Plaintiff asserts the following three arguments: (1) the current DOCCS menu is a health hazard, red meat is a health hazard with risk of premature death, and the United States District Court for the Central District of Illinois is currently reviewing use of soy products in prisons and whether this constitutes a health hazard; (2) Rastafarians are bound by religious principles in all areas of life and keeping kosher is critical to their belief system; and (3) Defendants are incorrect in stating that Plaintiff has failed to produce evidence that the eight-week-kosher-meal delay was intentionally inflicted by Defendants as Plaintiff's numerous requests were ignored and many Defendants were aware of the problem but failed to timely address it.  (*Id*.)

I.   **APPLICABLE LEGAL STANDARDS**

   A.   **Standard of Review Governing a Report-Recommendation**

When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review.  Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C).  To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings,  recommendations,

or report to which it has an objection and [2] the basis for the objection."  N.D.N.Y. L.R.

72.1(c).[3]  When performing such a *de novo* review, "[t]he judge may . . . receive further

evidence. . . ."  28 U.S.C. § 636(b)(1).  However, a district court will ordinarily refuse to consider

evidentiary material that could have been, but was not, presented to the magistrate judge in the

first instance.[4]

　　　When only a *general* objection is made to a portion of a magistrate judge's

report-recommendation, the Court subjects that portion of the report-recommendation to only a

*clear error* review.  Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee

Notes: 1983 Addition.[5]  Similarly, when an objection merely reiterates the *same arguments* made

---

[3]　　　*See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002)
("Although Mario filed objections to the magistrate's report and recommendation, the statement
with respect to his Title VII claim was not specific enough to preserve this claim for review. The
only reference made to the Title VII claim was one sentence on the last page of his objections,
where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set
forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.'
This bare statement, devoid of any reference to specific findings or recommendations to which
he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title
VII claim.").

[4]　　　*See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In
objecting to a magistrate's report before the district court, a party has no right to present further
testimony when it offers no justification for not offering the testimony at the hearing before the
magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v.
Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (district court did not abuse its
discretion in denying plaintiff's request to present additional testimony where plaintiff "offered
no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v.
Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the
district court to conduct a second hearing whenever either party objected to the magistrate's
credibility findings would largely frustrate the plain objective of Congress to alleviate the
increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory
Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary
evidentiary hearing is required.").

[5]　　　*See also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y.
Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir.
1999).

by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review.[6]   Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review.   Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition.   When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id*.[7]

   After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."   28 U.S.C. § 636(b)(1)(C).

   **B.     Standard of Review Governing a Defendants' Motion to Revoke**

   The Magistrate Judge correctly recited the legal standard governing Defendants' motion to revoke Plaintiff's *in forma pauperis* status pursuant to 28 U.S.C. § 1915(g).   (Dkt. No. 126, at Part II.C.)   As a result, these standards are incorporated by reference in this Decision and Order, which is intended primarily for the review of the parties.

---

   [6]     *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at *1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at *3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

   [7]     *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

9

C.      **Standard of Review Governing a Motion for Summary Judgment**

The Magistrate Judge correctly recited the legal standard governing motions for summary

judgment.  (Dkt. No. 126, at Part II.A.)  As a result, these standards are incorporated by

reference in this Decision and Order, which is intended primarily for the review of the parties.

III.    **ANALYSIS**

For the sake of brevity, the Court will liberally construe Plaintiff's Objections, and

Defendants' Objections, as together specifically challenging each and every finding and

recommendation of the Magistrate Judge's Report-Recommendation, so as to subject that

Report-Recommendation to a *de novo* review, rather than a clear-error review.  (*See generally*

Dkt. Nos. 127, 128, 129, 130, 133.)

After carefully subjecting the Magistrate Judge's thorough Report-Recommendation to a

*de novo* review, the Court adopts that Report-Recommendation for the reasons stated therein,

except for its recommendation regarding the survival of Plaintiff's claim against Defendants

Wendland and Nuttal for failing to provide him with kosher meals between January 24, 2005 and

March 24, 2005, which is also dismissed.

The Court reaches this latter conclusion for each of the three alternative reasons offered

by Defendants Wendland and Nuttal in their memorandum of law and Objection: (1) Plaintiff has

failed to adduce admissible record evidence from which a rational fact-finder could conclude

that they were personally involved in the denial of his kosher meals between January 24, 2005

and March 24, 2005; (2) even if the two Defendants in question were personally involved in that

violation, Plaintiff has failed to adduce admissible evidence establishing that those two

Defendants were anything more than negligent, which is not actionable under the First

Amendment and 42 U.S.C. § 1983; and (3) in any event, those two Defendants are protected

10

from liability as a matter of law by the doctrine of qualified immunity.  (*See* Dkt. No. 122,

Attach. 1, at 5-8, 16-18 (arguing that the two Defendants in question were not personally

involved, and that they are protected by qualified immunity); Dkt. No. 128 (arguing that

negligence is not actionable, and that Defendants are protected by qualified immunity).

The Court would add only the following six brief points.  First, based on the current

record, it appears that Defendants Wendland and Nuttal received notice of Plaintiff's letters at

the *very earliest* on March 21, 2005, and March 23, 2005, respectively–some eight weeks after

the alleged violations started and rather immediately before they ceased.  More specifically, on

March 21, 2005, Plaintiff  wrote a letter to Defendant Goord complaining that he was being

harassed and intentionally denied the CAD, which he had requested as part of his Jewish faith.

(Dkt. No. 124, Part 22, at 33-34.)  Eighteen days later, Defendant Nuttal sent a letter to Plaintiff

stating as follows:

> Commissioner Goord has referred your recent letters to me for
> a response.
>
> Please be advised that your letter regarding the alleged verbal
> harassment by staff and the handling of your Cold Alternative Diet has
> been referred to Superintendent Miller for his appropriate action and
> follow up.  Superintendent Miller is in the best position to deal with
> your concerns.

(*Id*. at 35.)  On April 15, 2005, Defendant Wendland wrote a memorandum to Plaintiff stating as

follows:

> This is in response to your letters of March 23, 2005 and March 24,
> 2005 addressed to the Commissioner, and letter of April 17, 2005
> addressed to the Superintendent.
>
> Issues of alleged verbal harassment are being addressed through
> inmate grievance complaints 20721-05 and 20710-05.

> I have been advised that you were placed on the cold alternative meal
> as soon as proper notification was received from the facility Chaplain.
> Meals are provided each and every day, three times a day, no
> exception.  Issues regarding hot water and cup of soup were resolved
> immediately.
>
> Kosher turkey and salad dressing have been ordered.  Different
> varieties of fruit will be provided when available.  Dry goods such as
> bread and cup of soup are not placed within the tray.  Kitchen staff
> will continue to monitor meals.

(*Id.* at 52.)  As a result, no rational fact finder could conclude that Plaintiff's letters gave

Defendants Wendland and Nuttal a reasonable opportunity to prevent the alleged constitutional

violations from starting on January 24, 2005, or to cause them to stop before March 24, 2005.[8]

Second, Defendant Nuttal was, during the time in question, entitled to refer Plaintiff's

letter of complaint to a subordinate, such as Defendant Miller, and rely on that subordinate to

conduct an appropriate investigation and response, without rendering himself personally

involved in the constitutional violations alleged in the complaint.[9]  Similarly, Defendant

---

[8]       While Plaintiff alleges, in his Second Amended Complaint, that he *orally*
requested the meals in question from Defendant Wendland soon after January 24, 2005, his
Second Amended Complaint is not verified and thus does not have the force and effect of an
affidavit.  (Dkt. No. 38, at ¶ 37.)  *See also Torres v. Viscomi*, 03-CV-0796, 2006 WL 2728628, at
*3 (D. Conn. Sept. 25, 2006) ("The plaintiff has filed no affidavit in response to the motion for
summary judgment and his amended complaint is not verified. Thus, the plaintiff has not
provided any evidence [with regard to his First Amendment claim] . . . ."); *Chisari v. Leeds,
Morelli & Brown, P.C.*, 02-CV-8836, 2004 WL 1588161, at *1, n.2 (S.D.N.Y. July 16, 2004)
("As Chisari's initial and amended complaints are not verified, they may not serve as affidavits
for summary judgment purposes.").  The Court notes that his declaration in opposition to
Defendants' motion does not appear to specifically address this issue, nor does his deposition
transcript.  (*See generally* Dkt. No. 124, at ¶ 37; Dkt. No. 122, Attach. 8.)

[9]       *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (holding that DOCS
Commissioner was not personally involved in alleged constitutional violation where he
forwarded plaintiff's letter of complaint to a staff member for decision, and he responded to
plaintiff's letter inquiring as to status of matter); *Brown v. Goord,* 04-CV-0785, 2007 WL
607396, at *6 (N.D.N.Y. Feb. 20, 2007) (McAvoy, J., adopting Report-Recommendation by
Lowe, M.J., on *de novo* review) (holding that a supervisor may "delegat[e] to high-ranking
subordinates the responsibility to read and respond to . . . complaints by prisoners" without

Wendland was entitled to rely on advice from her subordinates that (1) Plaintiff was placed on the CAD as soon as proper notification was received from the facility Chaplain, and (2) kitchen staff will continue to monitor Plaintiff's meals.[10]

Third, in any event, even if Defendants Nuttal and Wendland did somehow receive timely notice of the denial Plaintiff's kosher meals between January 24, 2005 and March 24, 2005, no rational facf-finder could conclude, based on the current record, that their responsive actions were taken with a state of mind that amounted to anything more than negligence, which indeed is not actionable under the First Amendment and 42 U.S.C. § 1983.[11]

---

becoming personally involved in constitutional violations alleged) [citations omitted], *accord, Pilgrim v. Artus*, 07-CV-1001, 2010 WL 3724833, at *7 (N.D.N.Y. March 18, 2010) (Treece, M.J.), *adopted*, 2010 WL 3724881 (N.D.N.Y.  Sept. 17, 2010) (Sharpe, J.); *Swindell v. Supple*, 02-CV-3182, 2005 WL 267725, at *10 (S.D.N.Y. Feb. 3, 2005) ("[A]ny referral by Goord of letters received from [plaintiff] to a representative who, in turn, responded, without more, does not establish personal involvement."); *Garvin v. Goord*, 212 F. Supp.2d 123, 126 (W.D.N.Y. 2002) ("[W]here a commissioner's involvement in a prisoner's complaint is limited to forwarding of prisoner correspondence to appropriate staff, the commissioner has insufficient personal involvement to sustain a § 1983 cause of action."); *Cruz v. Edwards*, 81-CV-7930, 1985 WL 467, at *4 (S.D.N.Y. Mar. 25, 1985) (finding defendant superintendent was not personally involved when he referred the appeal to the deputy superintendent).

[10]      *See, supra,* note 9 of this Decision and Order; *see also Fletcher v. Goord*, 07-CV-0707, 2008 WL 4426763, at *17 (N.D.N.Y. Sept. 25, 2008) (Sharpe, J., adopting Report-Recommendation of Lowe, M.J.) ("[A] DOCS supervisor's adoption of a recommendation by a subordinate investigating officer does not by itself demonstrate that he failed to remedy known misconduct."); *Thompson v. New York*, 99-CV-9875, 2001 WL 636432, at *7 (S.D.N.Y. Mar.15, 2001) ("The superintendent's adoption of the recommendation by the investigating officer cannot by itself demonstrate that he failed to remedy known misconduct.").

[11]      *See Cusamano v. Sobek*, 604 F. Supp.2d 416, 498 (N.D.N.Y.2009) (Suddaby, J.) ("Negligence is not actionable under the First Amendment . . . ."); *accord, Desmarat v. Artus,* 08-CV-0977, 2011 WL 1564605, at *6 (N.D.N.Y. March 25, 2011) (Treece, M.J.), *adopted*, 2011 WL 1557914 (N.D.N.Y. Apr. 25, 2011) (Hurd, J.); *Chaney v. Koupash*, 04-CV-0136, 2008 WL 5423419, at *10 (N.D.N.Y. Dec. 30, 2008) (Homer, M.J.) ("However, these allegations are, at best, negligence on the part of defendants in losing Chaney's legal documents after his transfer. This is not enough to establish a First Amendment violation."); *Holmes v. Grant*, 03-CV-3426, 2006 WL 851753, at *12 (S.D.N.Y. Mar.31, 2006) ("Mere negligence resulting in the loss of legal papers . . . does not state an actionable claim [as] plaintiff must allege facts

Fourth, Defendants' motion for summary judgment is granted (with regard to Defendants Nutall and Wendland, as well as the other Defendants) on the alternative ground that Plaintiff has failed to submit an adequate Rule 7.1 Response to Defendants' Rule 7.1 Statement, which was properly supported by accurate record citations and which–together with Defendants' memorandum of law–at the very least satisfied Defendants' threshold burden on their motion. (*Compare* Dkt. No. 122, Attach. 2 *with* Dkt. No. 124, Attach. 1.)  The Court notes that Plaintiff (who was an experienced *pro se* civil rights litigant before opposing Defendants' motion for summary judgment)[12] received adequate advanced notice of his need to properly respond to Defendants' Rule 7.1 Statement.  (Dkt. No. 122 [Notice of Motion and District's "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion"].)[13]

Fifth, to the extent that the dismissals recommended by the Report-Recommendation (regarding *any* of the Defendants) are pursuant to Fed. R. Civ. P. 12(b)(6) rather than Fed. R. Civ. P. 56, no further opportunity to amend is needed for each of the following two alternative

---

demonstrating that defendants deliberately and maliciously interfered with his access to the courts [under the First Amendment] . . . [such as allegations] that the defendants deliberately stole his legal papers."); *Jones v. Salt Lake County*, 503 F.3d 1147, 1162-63 (10th Cir.2007) ("[N]egligence does not state a § 1983 [First Amendment] claim."); *Taylor v. Dretke*, No. 05-41738, 239 F. App'x 882, 883-84 (5th Cir. June 28, 2007) (dismissing prisoner's access-to-courts claim because negligence is not actionable under First Amendment); *Willis v. Washington*, No. 96-2385, 1999 U.S. App. LEXIS 532, at *2-3 (7th Cir. Dec. 16, 1998) (dismissing prisoner's interference-with-mail claim because negligence is not actionable under First Amendment); *cf. Daniels v. Williams*, 474 U.S. 327, 331-33 (1986) ("[I]njuries inflicted by governmental negligence are not addressed by the United States Constitution.").

[12]       *See, e.g., Tafari v. McCarthy,* 07-CV-0654, Defs.' Notice to Plaintiff Regarding Consequences of Failing to Respond to Summary Judgment Motion (N.D.N.Y. filed Nov. 13, 2008); *Tafari v. Annetts*, 06-CV-11360, Defs.' Notice to Plaintiff Regarding Consequences of Failing to Respond to Summary Judgment Motion (S.D.N.Y. filed Jan. 28, 2008).

[13]       *See also* N.D.N.Y. 7.1(a)(3) (a copy of which was on file in Plaintiff's correctional facility during the time in question); Northern District's *Pro Se* Handbook, at 41 (a copy of which was on file in Plaintiff's correctional facility during the time in question).

reasons: (1) Plaintiff has already been granted two such opportunities;[14] and (2) any amendment would be futile due to the numerous substantive defects in his detailed claims.

Sixth, and finally, Plaintiff's claims for monetary relief against Defendants in their official capacities are dismissed on the alternative ground that they are barred by the Eleventh Amendment, for the reasons stated by Defendants in their memorandum of law.  (Dkt. No. 122, Attach. 1, at 6.)

For each of these numerous alternative reasons, Defendants' motion for summary judgment is granted in its entirety.

**ACCORDINGLY**, it is

**ORDERED** that the Magistrate Judge's Report-Recommendation (Dkt. No. 126) is **ACCEPTED** and **ADOPTED** **except** for its recommendation regarding the survival of Plaintiff's claim against Defendants Wendland and Nuttal for failing to provide him with kosher meals between January 24, 2005 and March 24, 2005; and it is further

**ORDERED** that Defendants' motion to revoke Plaintiff's *in forma pauperis* status as having been improvidently granted pursuant to 28 U.S.C. § 1915(g) (Dkt. No. 118) is **DENIED**; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 122) is **GRANTED in its entirety**; and it is further

**ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 38) is **DISMISSED** with prejudice; and it is further

---

[14]     *See De Ponceau v. Bruner*, 09-CV-0605, 2012 WL 1014821, at *4 & n.9 (N.D.N.Y. March 23, 2012) (Suddaby, J.) (collecting cases).

**ORDERED** that the Clerk of the Court shall issue a Judgment for Defendants and close

the file in this action.

Dated:   March 30, 2012
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

16